UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

FILED
JUL 23 2019
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 1:19-cr-100 |
| | ) |
| | ) Judge Mattice/Lee |
| SAYED BAHADOR ZAFAR SADEGHIAN | ) |
| a/k/a Bahador Sadeghian | ) Under Seal |
| a/k/a Bahador Zafar, | ) |
| PARDIS TORKAMANIASLI | ) |
| a/k/a Pardis Asli, | ) |
| NORTHEX ENTERPRISES, LLC, and | ) |
| ZAFARAN INDUSTRIAL GROUP | ) |

## INDICTMENT

### COUNT ONE
(Conspiracy to Violate the International Emergency Economic Powers Act)

### Introduction

At all times material to this Indictment:

1. Defendant SAYED BAHADOR ZAFAR SADEGHIAN, a/k/a Bahador Sadeghian, a/k/a Bahador Zafar ("SADEGHIAN"), was the owner and primary officer of NORTHEX ENTERPRISES, LLC., and of ZAFARAN INDUSTRIAL GROUP.

2. Defendant PARDIS TORKAMANIASLI, a/k/a Pardis Asli ("ASLI"), an Iranian national and a United States Permanent Resident Alien since May 2013, had resided both in Canada and the United States, most recently in Cerritos, California. ASLI was employed by NORTHEX ENTERPRISES, LLC as a "Procurement Coordinator" and had previously worked for the ZAFARAN INDUSTRIAL GROUP in Iran. ASLI was a relative of SADEGHIAN.

1

3. Defendant NORTHEX ENTERPRISES, LLC ("NORTHEX"), a corporation organized under the laws of the Republic of Georgia, operated in Poti, Georgia. NORTHEX was involved in the business of brokering, procuring, selling and distributing industrial and mechanical equipment, parts and supplies for the oil and gas industry, from numerous countries including the United States, for customers in Iran. SADEGHIAN was the owner and primary officer of NORTHEX.

4. ZAFARAN INDUSTRIAL GROUP ("the ZAFARAN GROUP"), a corporation organized under the laws of Iran and headquartered in Tehran, Iran, was in the business of purchasing, selling and distributing industrial and mechanical equipment, parts and supplies mechanical equipment and parts for the oil and gas industry to various customers in Iran. SADEGHIAN was the chairman of the ZAFARAN GROUP.

5. Sabah Tech, LLC was a services and logistics company located in Dubai, United Arab Emirates. The company maintained a website address at www.sabatech.com and claimed to specialize in "procuring various supplies from surplus markets and bringing them to insufficiently served demand markets."

6. Militzer & Münch Sea Air Cargo, GmbH was a freight forwarding company located, among various locations, in Frankfurt, Germany ("M&M Cargo"). M&M Cargo maintained a website address at www.Mumnet.com.

7. Perse International Forwarding ("PTB") was a freight forwarding company located, among various locations, in Tehran, Iran, and was associated with M&M Cargo.

8. United States Company A ("Company A"), located in the Eastern District of Tennessee, was a U.S. based manufacturer and supplier of a range of Processing Equipment,

2

including industrial and mechanical equipment, parts and supplies for the oil and gas industry, such as industrial valves, parts and components.

## The Laws and Regulation The Iran Trade Embargo and the Iranian Transactions and Sanctions Regulations

9. The International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, authorized the President of the United States to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States upon declaring a national emergency with respect to that threat.

10. On March 15, 1995, the President issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957, continued by Executive Orders Nos. 12959 and 13059, was in effect at all times relevant to this Indictment.

11. Executive Orders Nos. 12959 and 13059 (collectively, with Executive Order No. 12957, "Executive Orders,") imposed economic sanctions, including a trade embargo, on Iran. The Executive Orders prohibited, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Executive Orders.

12. The Executive Orders authorized the United States Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders. Pursuant to this authority, the Secretary of the Treasury, through the Office of Foreign Assets

3

Control (OFAC), promulgated the Iranian Transactions Regulations, subsequently renamed the Iranian Transactions and Sanctions Regulations (ITSR), 31 C.F.R. Part 560, implementing the sanctions required by the Executive Orders.

13. Absent written authorization or a license from OFAC, the ITSR prohibited:

    a. Any transaction that evades or avoids or attempts to violate; seeks to evade or avoid; causes a violation of; or conspires to violate, the ITSR (31 C.F.R. § 560.203);

    b. The exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran, including the exportation, reexportation, sale, or supply of any goods, technology or services to a person in a third country undertaken with knowledge or reason to know that such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.204); and

    c. The reexportation from a third country, directly or indirectly, by a person other than a United States person, of any goods, technology, or services that have been exported from the United States if: (i) such reexportation is undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran or the Government of Iran, and (ii) the exportation of such goods, technology, or services, was subject to export license application requirements under any United States regulations (31 C.F.R. § 560.205).

14. The Executive Orders and the ITSR were in effect at all times relevant to this Indictment. At no time relevant to this Indictment did any of the Defendants or any associated or related entities apply for or obtain any written authorization or export license from OFAC.

## Export and Shipping Records

15. The U.S. Department of Commerce, through the U.S. Census Bureau and the U.S. Department of Homeland Security, Customs & Border Protection, participated in and maintained the Automated Export System (AES), an electronic portal of information for exports of goods from the United States. The Census Bureau required the filing of electronic export information (EEI) through the AES (using AESDirect) pursuant to 13 C.F.R, Part 30. The purpose of these requirements was to strengthen the U. S. Government's ability to both maintain accurate trade statistics and to prevent the export of certain items to unauthorized destinations and end users because the AES aided in targeting, identifying, and when necessary, confiscating suspicious or illegal shipments prior to exportation. 15 C.F.R. § 30.1(b). Exporters filed EEI via AES by entering the data manually into AES via a computer. 15 C.F.R. § 30.6(a). EEI included the date of export, the U.S. Principal Party of Interest, the description of the commodity to be exported, the intermediate consignee's name and address (if applicable), the ultimate consignee's name and address, and the country of ultimate destination. 15 C.F.R. § 30.6. Each filing was identified by a unique Internal Transaction Number (ITN). Exporters, shippers, and freight forwarders were required to file an EEI for every export of goods or technology from the United States that had a value greater than $2,500 or for which an export license was required. (15 C.F.R. § 758.1; 15 C.F.R. § 30.2).

16. The United States Department of Commerce was responsible for reviewing and controlling the export of certain goods and technologies from the United States to foreign countries. The Export Administration Act ("EAA"), 50 U.S.C. §§ 4601-4623, authorized the U.S. Department of Commerce to prohibit or curtail the export of any goods and technology as necessary, to protect, among other things, the national security and foreign policy of the United

5

States. The U.S. Department of Commerce, through its arm, the Bureau of Industry and Security ("BIS"), implemented that authority through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. Although the EAA had lapsed, the EAR continued to be in effect under the provisions of IEEPA by virtue of Executive Order 13222 (August 17, 2001), as extended by successive Presidential notices, the most recent being on August 8, 2018. See, e.g., 83 Fed. Reg. 39,871 (Aug. 13, 2018).

17. The BIS reviewed and controlled the export of certain U.S. origin items from the United States to foreign countries through the EAR. 15 C.F.R. §§ 734.2-.3. In particular, BIS placed restrictions on the export and reexport of items that it determined could make a significant contribution to the military potential or nuclear proliferation of other nations or that could be detrimental to the foreign policy or national security of the United States. Under the EAR, such restrictions depended on several factors, including the technical characteristics of the item, the destination country, the end user, and the end use.

18. Certain sensitive items subject to EAR controls were identified on the Commerce Control List, or "CCL," set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL were categorized by Export Control Classification Number ("ECCN"), each of which had associated export control requirements above and beyond the destination, end use, and end user based license requirements. "Specific Processing Equipment," which includes industrial valves, parts and components were, according to the United States Department of Commerce, subject to the EAR and were listed on the Commerce Control List classified under ECCN 2B999. Commodities classified under this ECCN were restricted from export or reexport to prohibited destinations, including Iran, without the authorization of the U.S. Government in the form of an export license. These restrictions were based on both the ITSR

and the "Anti-Terrorism" policy control associated with items classified under ECCN 2B999. A license was required for the export or reexport of any item subject to Anti-Terrorism control reasons to Iran as the Secretary of State had designated Iran as "a country whose Government has repeatedly provided support for acts of international terrorism." See 15 C.F.R. § 742.8.

19. At no time did SADEGHIAN, ASLI, NORTHEX or any other exporter apply for, receive, or possess a license from the U.S. Department of Treasury to export any Specific Processing Equipment, which included industrial valves, actuators and assorted parts as described in this Indictment for export from the United States to Iran.

### Outbound Smuggling Contrary to U.S. Law – 18 U.S.C. § 554

20. Title 18 U.S.C. § 554 states that "[w]hoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both."

### The Conspiracy

21. Beginning in or about September 2012, the exact date being unknown to the Grand Jury, and continuing through in or about October 2015, in the Eastern District of Tennessee and elsewhere, the defendants,

SAYED BAHADOR ZAFAR SADEGHIAN
a/k/a Bahador Sadeghian
a/k/a Bahador Zafar,
PARDIS TORKAMANIASLI
a/k/a Pardis Asli,
NORTHEX ENTERPRISES, LLC, and

7

ZAFARAN INDUSTRIAL GROUP,

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to defraud the United States and commit the following offense against the United States, to wit: knowingly and willfully exporting mechanical equipment and parts from the United States to Iran without first having obtained from the U.S. Department of the Treasury either written authorization or a license, in violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1705, and Title 31, Code of Federal Regulations, Sections 560.203, 560.204, and 560.205.

### Objects

22. The objects of the conspiracy were:

    a. To acquire and procure U.S.-origin Specific Processing Equipment, which included mechanical equipment and parts, such as industrial valves, actuators and assorted parts (collectively the "Processing Equipment") for and on behalf of SADEGHIAN, NORTHEX, the ZAFARAN GROUP, and various Iran based customers;

    b. To conceal from the U.S. government and U.S. companies that the Processing Equipment was to be exported to Iran for defendant SADEGHIAN;

    c. To make financial profit for the defendants and other conspirators;

    d. To evade the regulations and prohibitions of IEEPA and the ITSR.

### Manner and Means

23. SADEGHIAN, ASLI and NORTHEX, and other conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

8

a. SADEGHIAN, ASLI and NORTHEX, and other conspirators would use e-mail accounts and other forms of communication to communicate with co-conspirators and with the ZAFARAN GROUP.

b. SADEGHIAN would request quotes for specified types and quantities of U.S.-origin Processing Equipment from ASLI on behalf of the ZAFARAN GROUP and its customers in Iran.

c. ASLI would respond to requests from SADEGHIAN by contacting the U.S. (and other) manufacturers and suppliers to obtain pricing quotations based on the quantities and specifications requested by SADEGHIAN and his customers in Iran.

d. ASLI would negotiate with U.S. and other manufacturers and suppliers as to the terms of the order, including purchase price and delivery terms, for the Processing Equipment ordered by SADEGHIAN and his customers in Iran.

e. ASLI would prepare shipping and customs documentation, and arranged for delivery of the Processing Equipment to Air-Sea Forwarders, Inc. ("Air-Sea") using a United Arab Emirates (UAE) intermediary company known as Sabah Tech, LLC as directed by SADEGHIAN for the purpose of transshipping and reexporting the U.S.-origin Processing Equipment to Iran.

f. ASLI and NORTHEX would falsely represent to Company A that the end user for the Processing Equipment was located in the UAE, all the while knowing that the Processing Equipment was intended for, and would be shipped to Iran for SADEGHIAN.

g. SADEGHIAN and ASLI would pay for the orders through international monetary wire transfers to Company A accounts.

9

## Overt Acts

24. In furtherance of this conspiracy, and to accomplish its purpose and object, at least one of the conspirators committed or caused to be committed, in the Eastern District of Tennessee and elsewhere, at least one of the following overt acts:

25. On or about September 3, 2012, SADEGHIAN communicated to ASLI using the email account of Bahador@zafaran.net regarding the subject "U.S. Agent !" that:

"As you know perfectly because of sanctions there are some difficulties to purchase some items of different projects for us. I am thinking of this idea to purchase items from the U.S. You will be our local agent….we can use both Northex companies (Canadian and Georgian) to purchase the goods and transfer to Iran via Georgia."

26. On or about September 10, 2012, NORTHEX sent to ASLI a list of electronic files which contained technical specifications for a range of Processing Equipment, including industrial valves, strainers, steam trap valves and aluminum-bronze valves.

27. On or about September 10, 2012, ASLI told NORTHEX and SADEGHIAN that "I will search for possible vendors and will share info with you to see if I am right. After confirmation, I will start sending inquiries."

28. On or about October 16, 2012, NORTHEX sent to ASLI, and SADEGHIAN, a list of purchasing priorities for industrial valves with references to "PH1718-19-2021-PGS" and "PH1718-19-2012-BBSU-PGS."

29. On or about October 18, 2012, ASLI contacted a Canadian manufacturer with a request to purchase steam jacketed valves, which request was forwarded to Company A.

30. On or about October 23, 2012, Company A contacted ASLI with a list of questions regarding the specifications of the requested valves and the end user of the items.

10

31. On or about October 23, 2012, a NORTHEX officer sent an email to ASLI and SADEGHIAN that stated, "Here below you can consider communication I had with Durco. Besides, our MR for Project 17&18 and PH19 are attached (or course vendor doesn't know anything about these projects)."

32. On or about October 24, 2012, NORTHEX contacted ASLI and SADEGHIAN to caution that "As we are pretending these valves will be used for a fertilizer plant and on the other hand specifications mentioned in PH17&18 and PH19 are very different and doubtful, from now on we shouldn't send these two MRs for a vendor simultaneously. It will reveal we need these products for other reason."

33. On or about October 30, 2012, ASLI contacted SADEGHIAN with regard to a need to create the appearance of a functioning website for NORTHEX, stating that an employee of Company A "wants to see our website. He is in touch with me and calling me. He mentioned our website 1-2 times and I just raised some excuses! He was wondering if we are somehow a supplier company!"

34. On or about May 2, 2013, ASLI told a US valve company with regard to a request for a quote for pricing on a pressure control valve that the "products I purchase, will be shipped to Georgia…All of them are related to Northex Enterprises."

35. On or about August 11, 2013, SADEGHIAN told ASLI that "Bank of Georgia became sensitive on me as an Iranian person. They ask me lots of document even for small transaction….As you can find attached, I prepared a dummy invoice each time to transfer to you. For this transfer please prepare it by yourself with correct address and number, also we need an agreement draft which shows that you are working for northex as a procurement consultant."

11

Case 1:19-cr-00100-TRM-SKL   Document 3   Filed 07/23/19   Page 11 of 17   PageID #: 13

36. On or about February 24, 2014, NORTHEX submitted Purchase Order No. NX-PGS2021-SCU-PO-033-03 to Company A with regard to sixty-nine manual and actuated steam jacketed plug valves.

37. On or about March 31, 2014, NORTHEX caused the payment of $44,881.50 to be made via international wire transfer to Company A, which is located in the Eastern District of Tennessee.

38. On or about April 24, 2014, Company A requested that ASLI provide information on the end user of the "aforementioned PO number."

39. On or about April 27, 2014, ASLI represented to Company A that the end user of the valves and parts was NORTHEX and the end destination was Georgia.

40. In or about June 2015, NORTHEX caused Company A to create Commercial Invoice No. 21820 that listed NORTHEX as the consignee, based upon information provided by NORTHEX, with regard to jacketed plug valves, 2-way jacketed plug valves with pneumatic actuators and control stations for $138,174.

41. On or about July 20, 2015, ASLI instructed Company A to re-issue an Invoice Packing List and Certificate of Origin with Sabah Tech, LLC as the consignee.

42. On or about July 22, 2015, Company A created Commercial Invoice No. 21820 with regard to jacketed plug valves, 2-way jacketed plug valves with pneumatic actuators and control stations for $138,174, listing Sabah Tech, LLC as the consignee and end user.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Smuggling Goods from the United States)

43. The allegations in Paragraphs 1 through 42 are incorporated and realleged by reference in this Count.

44. On or about the dates listed below, in the Eastern District of Tennessee and elsewhere, the defendants

SAYED BAHADOR ZAFAR SADEGHIAN
a/k/a Bahador Sadeghian
a/k/a Bahador Zafar,
PARDIS TORKAMANIASLI
a/k/a Pardis Asli,
NORTHEX ENTERPRISES, LLC, and
ZAFARAN INDUSTRIAL GROUP,

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly export and send from the United States, U.S.-origin merchandise, articles and objects, knowing the same to be intended for exportation contrary to the law and regulation of the United States, to wit, Title 50, United States Code, Section 1705(a), Executive Orders 12957, 12959, & 13059; Title 31, Code of Federal Regulations, Sections 560.203 & 560.204:

| Count | Date | AES Filing Number | Item Description | Actual Value / Declared Value | False End User |
|---|---|---|---|---|---|
| 2 | 7/31/15 | X20150731408853 | Plug type taps, cocks, and valves of steel, and control valves with pneumatic actuators | $138,174.00/ $118,122.00 | Sabah Tech, LLC, Dubai, UAE |

All in violation of Title 18, United States Code, Section 554 and Section 2.

## COUNT THREE
### (International Emergency Economic Powers Act)

45. The allegations in Paragraphs 1 through 42 are incorporated and realleged by reference in this Count.

46. On or about the dates listed below, in the Eastern District of Tennessee and elsewhere, defendants

SAYED BAHADOR ZAFAR SADEGHIAN
a/k/a Bahador Sadeghian
a/k/a Bahador Zafar,
PARDIS TORKAMANIASLI
a/k/a Pardis Asli,
NORTHEX ENTERPRISES, LLC, and
ZAFARAN INDUSTRIAL GROUP,

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly and willfully attempt to export the U.S.-origin commodities listed below from the United States to Iran without having first obtained the required authorization from the United States Department of Treasury:

| Count | Date | Commercial Invoice Number | Item Description | Actual Value / Declared Value | False End User |
|---|---|---|---|---|---|
| 3 | 7/22/15 | Invoice # 21820 Buyer Order # NX-PGS2021-SCU-PO-033-03 | Plug type taps, cocks, and valves of steel, and control valves with pneumatic actuators | $138,174.00/ $118,122.00 | Sabah Tech, LLC - Dubai, UAE |

All in violation of Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204, and Title 18, United States Code, Section 2.

### COUNTS FOUR and FIVE
### (International Money Laundering)

47. The allegations contained in Paragraphs 1 through 42 of this Indictment are incorporated and realleged by reference herein.

48. On or about the dates set forth below, in the Eastern District of Tennessee and elsewhere, the defendants,

14

SAYED BAHADOR ZAFAR SADEGHIAN
a/k/a Bahador Sadeghian
a/k/a Bahador Zafar,
PARDIS TORKAMANIASLI
a/k/a Pardis Asli,
NORTHEX ENTERPRISES, LLC, and
ZAFARAN INDUSTRIAL GROUP

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds, as described more fully below for each count, to a place in the United States from a place outside the United States, that is, UAE, with the intent to promote the carrying on of specified unlawful activity, namely: an offense relating to violation of Smuggling Goods from the United States, as charged in Count 2:

| Count | Date | Funds Transferred from | Funds Transferred to | Amount of Transaction |
|---|---|---|---|---|
| 4 | 7/28/15 | NORTHEX ENTERPRISES, LLC, Republic of Georgia | Company A | $74,960.00 |
| 5 | 7/28/15 | NORTHEX ENTERPRISES, LLC, Republic of Georgia | Company A | $11,069.17 |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

### FORFEITURE ALLEGATIONS

As a result of committing one or more of the offenses alleged in Counts One through Five of this Indictment, the defendants SAYED BAHADOR ZAFAR SADEGHIAN, a/k/a Bahador Sadeghian, a/k/a Bahador Zafar; PARDIS TORKAMANIASLI, a/k/a Pardis Asli; NORTHEX ENTERPRISES, LLC; and ZAFARAN INDUSTRIAL GROUP, shall forfeit their interests to the United States of America as follows:

1. The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

2461(c). Upon conviction of an offense in violation of Title 18, United States Code, Sections 371 and 554, and Title 50, United States Code, Section 1705, the defendants, SAYED BAHADOR ZAFAR SADEGHIAN, a/k/a Bahador Sadeghian, a/k/a Bahador Zafar; PARDIS TORKAMANIASLI, a/k/a Pardis Asli; NORTHEX ENTERPRISES, LLC; and ZAFARAN INDUSTRIAL GROUP, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.

  2. The allegations contained in Counts Four and Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1). Upon conviction of an offense in violation of Title 18, United States Code, Section 1956(a)(2)(A), the defendants, SAYED BAHADOR ZAFAR SADEGHIAN, a/k/a Bahador Sadeghian, a/k/a Bahador Zafar; PARDIS TORKAMANIASLI, a/k/a Pardis Asli; NORTHEX ENTERPRISES, LLC; and ZAFARAN INDUSTRIAL GROUP, shall forfeit to the United States of America any property, real or personal, involved in such offense, or any property traceable to such property.

  3. If any of the property described above, as a result of any act or omission of the defendants:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

Case 1:19-cr-00100-TRM-SKL Document 3 Filed 07/23/19 Page 16 of 17 PageID #: 18

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

███████████████████

GRAND JURY FOREPERSON

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

By: _____
Perry H. Piper
Assistant U.S. Attorney

17

Case 1:19-cr-00100-TRM-SKL   Document 3   Filed 07/23/19   Page 17 of 17   PageID #: 19